IN THE UNITED STATES DISTRICT COURT FOR THE

**FILED**

WESTERN DISTRICT OF OKLAHOMA

JUL 05 2023

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CARMELITA REEDER SHINN, CLERK<br>U.S. DIST. COURT, WESTERN DIST. OKLA.<br>BY_____,DEPUTY |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CR 23-278 HE** |
| -vs- | ) | No. _____ |
| | ) | |
| NAIGANG LIN, | ) | Violations: 21 U.S.C. § 846 |
|   a/k/a Nai Lin, | ) |       21 U.S.C. § 841(a)(1) |
| NAIYANG LIN, | ) |       18 U.S.C. § 2 |
|   a/k/a Nai Yang Lin, | ) |       18 U.S.C. § 924(c)(1)(A) |
| LI JIN YANG, | ) |       21 U.S.C. § 856(a)(1) |
|   a/k/a Lily, | ) |       18 U.S.C. § 1956(h) |
| DONG LIN, | ) |       18 U.S.C. § 1956(a)(1)(B)(i) |
|   a/k/a Dong, | ) |       18 U.S.C. § 1956(a)(1)(B)(ii) |
| CHANG-HUI CHEN, | ) |       18 U.S.C. § 1957 |
|   a/k/a Chen, | ) |       18 U.S.C. § 924(d) |
| MEIYAN XIAO, | ) |       18 U.S.C. § 982(a)(1) |
| FEI XIE, | ) |       21 U.S.C. § 853 |
| BARRY STADLER, | ) |       28 U.S.C. § 2461(c) |
| DANIEL WALSH, | ) | |
| TERRANCE JAMAHL ALLEN, | ) | |
| AHMED SALIM HARROLD, | ) | |
| LUIS RAFAEL LARIOS-BENITES, | ) | |
| NAIQING LIN, | ) | |
|   a/k/a Nai Quing Lin, | ) | |
| JUAN LYU, and | ) | |
| BRANDON LIN, | ) | |
| | ) | |
| Defendants. | ) | |

**I N D I C T M E N T**

The Federal Grand Jury charges:

## COUNT 1
### (Drug Conspiracy)

From in or about January 2019, the exact date being unknown to the Grand Jury, and continuing thereafter through on or about May 10, 2023, within the Western District of Oklahoma and elsewhere,

------------------------------------------- **NAIGANG LIN,**
         **a/k/a Nai Lin,**
        **NAIYANG LIN,**
         **a/k/a Nai Yang Lin,**
        **LI JIN YANG,**
         **a/k/a Lily,**
        **DONG LIN,**
         **a/k/a Dong,**
        **CHANG-HUI CHEN,**
         **a/k/a Chen,**
        **MEIYAN XIAO,**
        **FEI XIE,**
        **BARRY STADLER,**
        **DANIEL WALSH,**
        **TERRANCE JAMAHL ALLEN,**
        **AHMED SALIM HARROLD, and**
        **LUIS RAFAEL LARIOS-BENITES** -------------------

knowingly and intentionally conspired, combined, confederated, and agreed with each other and others, both known and unknown to the Grand Jury, to interdependently possess with intent to distribute and to distribute controlled substances, including 1,000 kilograms or more of a mixture or substance containing a detectable amount of marihuana and 1,000 or more marihuana plants, both Schedule I controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

## MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were accomplished by the following means, among others:

1.      During the period of the conspiracy, **NAIGANG LIN** directed a major drug trafficking organization (the Lin DTO) headquartered in Michigan and the Western District of Oklahoma specializing in the cultivation, brokering, and distribution of black-market marihuana across the country.  The Lin DTO relied on a network of individuals for its operation.  These individuals included family members, such as his brother **NAIYANG LIN,** his mother **LI JIN YANG,** and his father **DONG LIN**, as well as other associates, including **CHANG-HUI CHEN, MEIYAN XIAO,** and **FEI XIE**, all of whom were responsible for maintaining and operating marihuana grows and/or marihuana stash houses.  **FEI XIE**, in particular, financed illegal grows associated with the Lin DTO and brokered buyers of black-market marihuana.  Other members of the Lin DTO, such as **BARRY STADLER, DANIEL WALSH, TERRANCE JAMAHL ALLEN, AHMED SALIM HARROLD**, and **LUIS RAFAEL LARIOS-BENITES**, served as couriers for the organization, transporting marihuana across the country to the Lin DTO's many customers.

2.      During the investigation, law enforcement identified a number of marihuana grows and stash houses used by the Lin DTO in Michigan.  These include 5189 Bonasa Dr. NE, Rockford, Michigan (the "Bonasa Residence"); 3040 Hamlet Circle, East Lansing, Michigan ("the Hamlet Residence"); 2866 Turtlecreek Dr., East Lansing, Michigan (the "Turtlecreek Residence"); 1400 Sunset Ave., Lansing, Michigan (the "Sunset Property");

3

5253 Division Ave. S., Grand Rapids, Michigan; 5500 Division Ave. S., Grand Rapids, Michigan; 1744 68th St. SW, Byron Center, Michigan (the "68th St. Residence"); and 9460 Homerich Ave. SW, Byron Center, Michigan (the "Homerich Residence"). During the period of the conspiracy, **NAIGANG LIN, NAIYANG LIN, LI JIN YANG, DONG LIN, FEI XIE,** and **AHMED SALIM HARROLD** frequented and maintained these marihuana grows and/or stash houses in furtherance of the Lin DTO.

a. For example, on May 15, 2021, law enforcement was surveilling the Bonasa Residence, a residence under the name of **NAIGANG LIN**, during which time they observed **NAIGANG LIN** and **FEI XIE** load large totes in the rear of an associate's vehicle. When **NAIGANG LIN, FEI XIE**, and the associate departed the Bonasa Residence in separate vehicles, law enforcement conducted a traffic stop on the associate's vehicle, at which point law enforcement seized approximately 28 pounds of high-grade marihuana located in the totes. Analysis of phone data from the associate's phone established that **NAIGANG LIN** had also been directing the associate to 5500 Division Ave. S., Grand Rapids, Michigan, another property controlled by **NAIGANG LIN**.

b. Later that year, on October 6, 2021, law enforcement executed a search warrant at the Homerich Residence. In the months prior to the search warrant, agents surveilled not only **NAIGANG LIN** but also other members of the organization, including **LI JIN YANG, DONG LIN, FEI XIE**, and **AHMED SALIM HARROLD**. During the search, agents located an indoor

4

marihuana grow and seized approximately 3,030 marihuana plants and approximately 42 pounds of processed marihuana.

c. The Lin DTO, however, did not only use residences as marihuana stash houses. They also used storage units, such as the one located at 5633 Division Ave. S., Wyoming, Michigan, and maintained by **AHMED SALIM HARROLD**. In or around December 2021, law enforcement learned that **HARROLD** had been storing marihuana in this storage facility but moved it out the day prior to agents arriving. Based on photos taken by management, agents estimated that **HARROLD** had approximately 50 pounds of marihuana in the unit. One month later, on January 19, 2022, **AHMED SALIM HARROLD** was observed loading boxes and trash bags into his vehicle as he visited various Lin DTO stash houses, including the 68th St. Residence. Shortly after, he was pulled over on a traffic stop. During that traffic stop, officers located 57 pounds of marihuana in his vehicle.

d. On February 16, 2022, law enforcement executed three search warrants on premises owned and frequented by members of the Lin DTO, specifically: (1) the Hamlet Residence, (2) the Turtlecreek Residence, and (3) the Sunset Property (owned by **FEI XIE's** company, Feilos Holdings LLC). Each of those search properties was found to contain marihuana, with the Hamlet Residence containing 85.25 pounds of marihuana, the Turtlecreek Residence containing 119.37 pounds of marihuana, and the Sunset Property containing 1,079 marihuana plants.

5

3.     In or about early 2022, having been subject to a number of law enforcement actions in Michigan, members of the Lin DTO, including **NAIGANG LIN**, **NAIYANG LIN**, **LI JIN YANG**, and **DONG LIN**, relocated to the Western District of Oklahoma, where they continued to serve as marihuana brokers and distributors while taking advantage of Oklahoma's significant increase in marihuana grows established under Oklahoma's medical marihuana licensing regime. The Lin DTO continued its operations, establishing marihuana grows in Ada, Oklahoma, and Oklahoma City, Oklahoma, and using these grows—as well as other marihuana grows across Oklahoma and in other states—to distribute marihuana on the black market in violation of both state and federal law.

4.     For example, on or about April 21, 2022, **BARRY STADLER**, a Lin DTO marihuana courier, was arrested in West Virginia transporting approximately 430 pounds of marihuana. The vehicle **BARRY STADLER** was driving was registered to **NAIQING LIN**.   Phone analysis on **BARRY STADLER's** phone established that he had left Oklahoma City two days prior and that he was transporting the marihuana on behalf of **NAIGANG LIN**.

5.     **BARRY STADLER**, however, was only one of several couriers employed by the Lin DTO.  On December 19, 2022, law enforcement conducted a traffic stop on another Lin DTO courier, **DANIEL WALSH**, during which they located approximately 262 pounds of marihuana. Phone analysis on **DANIEL WALSH's** phone established that he met with **NAIGANG LIN** in Oklahoma City prior to departing and that **NAIGANG LIN** had been directing his movements for the months prior.

6.      Just as in Michigan, the Lin DTO relied on a network of stash houses in Oklahoma City to store bulk amounts of marihuana prior to it being transported to customers in other states.  These stash locations, including 6928 Melrose Lane, Suite B, Oklahoma City, Oklahoma; 1224 N. Council Rd., Oklahoma City, Oklahoma (the "1224 Council Warehouse"); 1228 N. Council Rd., Oklahoma City, Oklahoma (the "1228 Council Warehouse"); and 5800 Sanabel Court, Oklahoma City, Oklahoma (the "Sanabel Residence"), were maintained by **NAIGANG LIN, NAIYANG LIN, CHANG-HUI CHEN**, and **MEIYAN XIAO**.  For instance, on or about February 9, 2023, law enforcement observed **NAIGANG LIN, CHANG-HUI CHEN**, and **MEIYAN XIAO** load up a white Honda Odyssey at the 1224 Council Warehouse.  Upon departing the 1224 Council Warehouse, the Honda Odyssey, driven by and registered to **LUIS RAFAEL LARIOS-BENITES**, was stopped by law enforcement and approximately 162 pounds of marihuana were recovered.

7.      During the next month, law enforcement made additional seizures of marihuana and cash from the Lin DTO.  For example, on February 13, 2023, law enforcement in Mississippi made a traffic stop on a vehicle driven by **MEIYAN XIAO**. At approximately 12:56 a.m. that morning, the vehicle, in which **CHANG-HUI CHEN** was a passenger, had departed from the Sanabel Residence, a stash house maintained by **NAIGANG LIN, CHANG-HUI CHEN**, and **MEIYAN XIAO**.  The vehicle appeared to have arrived at a residence in Starkville, Mississippi around 11:13 a.m., where it stayed for approximately 12 minutes before departing and appearing to travel back to Oklahoma.  The vehicle was found to contain approximately $121,650.

8.      A little over a week later, on February 21, 2023, law enforcement observed **TERRANCE JAMAHL ALLEN** visit the Sanabel Residence and meet with **NAIGANG LIN, CHANG-HUI CHEN**, and **MEIYAN XIAO**.  **TERRANCE JAMAHL ALLEN** backed his vehicle into the garage, and after remaining there for a short period of time, he departed the residence in his vehicle.  Shortly thereafter, a traffic stop on **TERRANCE JAMAHL ALLEN's** vehicle was conducted, resulting in a seizure of approximately 262 pounds of marihuana contained in several large bags.

9.      Consistent with how the Lin DTO had operated marihuana grows in Michigan, upon relocation to Oklahoma, members of the DTO, including **NAIGANG LIN, NAIYANG LIN, LI JIN YANG**, and **DONG LIN**, established and operated black-market marihuana grows in furtherance of the conspiracy.  These marihuana grows included 18609 County Road 1580, Ada, Oklahoma, and 1825 SE 66th St., Suite 201, Oklahoma City, Oklahoma.  These grows, which were established under the guise of complying with Oklahoma's medical marihuana system, were not in compliance with Oklahoma's law on the production and distribution of medical marihuana.

The Grand Jury further incorporates all statements and allegations contained in Counts 2 through Count 47, as though fully set forth herein.

All in violation of Title 21, United States Code, Section 846, the penalty for which is found at Title 21, United States Code, Section 841(b)(1)(A).

8

## COUNT 2
### (Possession of Marihuana with Intent to Distribute)

On or about December 19, 2022, within the Western District of Oklahoma,

\------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin, and**
**DANIEL WALSH** -------------------------------------------

knowingly and intentionally possessed with intent to distribute 100 kilograms or more of

a mixture or substance containing a detectable amount of marihuana, a Schedule I

controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1), the penalty for

which is found at Title 21, United States Code, Section 841(b)(1)(B), and Title 18, United

States Code, Section 2.

## COUNT 3
### (Distribution of Marihuana)

On or about February 9, 2023, within the Western District of Oklahoma,

\------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin, and**
**MEIYAN XIAO** -------------------------------------------------

knowingly and intentionally distributed 50 kilograms or more of a mixture or substance

containing a detectable amount of marihuana, a Schedule I controlled substance, to **LUIS**

**RAFAEL LARIOS-BENITES**.

All in violation of Title 21, United States Code, Section 841(a)(1), the penalty for

which is found at Title 21, United States Code, Section 841(b)(1)(C), and Title 18, United

States Code, Section 2.

9

## COUNT 4
### (Possession of Marihuana with Intent to Distribute)

On or about February 9, 2023, within the Western District of Oklahoma,

------------------------------ **LUIS RAFAEL LARIOS-BENITES** ------------------------------

knowingly and intentionally possessed with intent to distribute 50 kilograms or more of a

mixture or substance containing a detectable amount of marihuana, a Schedule I controlled

substance.

All in violation of Title 21, United States Code, Section 841(a)(1), the penalty for

which is found at Title 21, United States Code, Section 841(b)(1)(C).

## COUNT 5
### (Possession of a Firearm in Furtherance of a Drug-Trafficking Crime)

On or about February 9, 2023, within the Western District of Oklahoma,

------------------------------ **LUIS RAFAEL LARIOS-BENITES** ------------------------------

knowingly possessed a firearm, specifically a green semi-automatic 9mm handgun, with

no serial number, in furtherance of a drug-trafficking crime for which he may be prosecuted

in a court of the United States, that is, possession of marihuana with intent to distribute as

charged in Count 4.

All in violation of Title 18, United States Code, Section 924(c)(1)(A), the penalty

for which is found at Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 6
**(Distribution of Marihuana)**

On or about February 21, 2023, within the Western District of Oklahoma,

-------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,**
**CHANG-HUI CHEN,**
**a/k/a Chen, and**
**MEIYAN XIAO** -----------------------------------------------

knowingly and intentionally distributed 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, a Schedule I controlled substance, to **TERRANCE JAMAHL ALLEN**.

All in violation of Title 21, United States Code, Section 841(a)(1), the penalty for which is found at Title 21, United States Code, Section 841(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT 7
**(Possession of Marihuana with Intent to Distribute)**

On or about February 21, 2023, within the Western District of Oklahoma,

-------------------------------- **TERRANCE JAMAHL ALLEN** ---------------------------------

knowingly and intentionally possessed with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1), the penalty for which is found at Title 21, United States Code, Section 841(b)(1)(B).

## COUNT 8
**(Maintaining a Drug-Involved Premises)**

From in or about September 6, 2022, the exact date being unknown to the Grand Jury, through on or about May 10, 2023, within the Western District of Oklahoma,

---------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,**
**NAIYANG LIN,**
**a/k/a Nai Yang Lin,**
**CHANG-HUI CHEN,**
**a/k/a Chen, and**
**MEIYAN XIAO** ----------------------------------------------

knowingly and intentionally opened, leased, rented, used, and maintained a place at 6928 Melrose Lane, Suite B, Oklahoma City, Oklahoma, for the purpose of storing and distributing marihuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

## COUNT 9
**(Maintaining a Drug-Involved Premises)**

From in or about October 12, 2022, the exact date being unknown to the Grand Jury, through on or about May 10, 2023, within the Western District of Oklahoma,

---------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,**
**CHANG-HUI CHEN,**
**a/k/a Chen, and**
**MEIYAN XIAO** ----------------------------------------------

knowingly and intentionally opened, leased, rented, used, and maintained a place at 5800 Sanabel Court, Oklahoma City, Oklahoma, for the purpose of storing and distributing marihuana, a Schedule I controlled substance.

12

All in violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

## COUNT 10
### (Maintaining a Drug-Involved Premises)

From in or about October 27, 2022, the exact date being unknown to the Grand Jury, through on or about May 10, 2023, within the Western District of Oklahoma,

--------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,**
**CHANG-HUI CHEN,**
**a/k/a Chen, and**
**MEIYAN XIAO** ---------------------------------------------

knowingly and intentionally opened, leased, rented, used, and maintained a place at 1224 N. Council Rd., Oklahoma City, Oklahoma, for the purpose of storing and distributing marihuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

## COUNT 11
### (Maintaining a Drug-Involved Premises)

From in or about October 31, 2022, the exact date being unknown to the Grand Jury, through on or about May 10, 2023, within the Western District of Oklahoma,

--------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,**
**CHANG-HUI CHEN,**
**a/k/a Chen, and**
**MEIYAN XIAO** ---------------------------------------------

knowingly and intentionally opened, leased, rented, used, and maintained a place at 1228

N. Council Rd., Oklahoma City, Oklahoma, for the purpose of manufacturing, storing, and

distributing marihuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 856(a)(1), and Title 18,

United States Code, Section 2.

### COUNT 12
### (Maintaining a Drug-Involved Premises)

From in or about November 24, 2022, the exact date being unknown to the Grand

Jury, through on or about May 10, 2023, within the Western District of Oklahoma,

-------------------------------------------- **NAIYANG LIN,**
                                   **a/k/a Nai Yang Lin,**
                                   **LI JIN YANG,**
                                   **a/k/a Lily, and**
                                   **DONG LIN,**
                                   **a/k/a Dong,** --------------------------------------------

knowingly and intentionally opened, leased, rented, used, and maintained a place at 1825

SE 66th St., Suite 201, Oklahoma City, Oklahoma, for the purpose of storing,

manufacturing, and distributing marihuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 856(a)(1), and Title 18,

United States Code, Section 2.

### COUNT 13
### (Possession of Marihuana with Intent to Distribute)

On or about May 3, 2023, within the Western District of Oklahoma,

-------------------------------------------- **NAIYANG LIN,**
                                   **a/k/a Nai Yang Lin,** ------------------------------------

knowingly and intentionally possessed with intent to distribute 1,000 or more marihuana plants, a Schedule I controlled substance, at 1825 SE 66th St., Suite 201, Oklahoma City, Oklahoma.

All in violation of Title 21, United States Code, Section 841(a)(1), the penalty for which is found at Title 21, United States Code, Section 841(b)(1)(A).

## COUNT 14
### (Money Laundering Conspiracy)

From in or about January 2019, the exact date being unknown to the Grand Jury, and continuing thereafter through on or about May 10, 2023, within the Western District of Oklahoma and elsewhere,

---------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,**
**NAIYANG LIN,**
**a/k/a Nai Yang Lin,**
**LI JIN YANG,**
**a/k/a Lily,**
**DANIEL WALSH,**
**TERRANCE JAMAHL ALLEN,**
**AHMED SALIM HARROLD,**
**NAIQING LIN,**
**a/k/a Nai Qing Lin,**
**JUAN LYU, and**
**BRANDON LIN** ----------------------------------------

knowingly and intentionally combined, conspired, confederated, and agreed with each other and with others, both known and unknown to the Grand Jury, to interdependently conduct financial transactions affecting interstate and foreign commerce in violation of Title 18, United States Code, Section 1956(h), namely:

15

(a)  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the felonious buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, both specified unlawful activities, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the felonious buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, both specified unlawful activities, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii); and

16

(c)   to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the felonious buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, both specified unlawful activities, in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were accomplished by the following means, among others:

1.   During the period of the conspiracy, **NAIGANG LIN**, with the help of his brother **NAIYANG LIN**, his mother **LI JIN YANG**, and his father **DONG LIN**, directed a major drug trafficking organization (the "Lin DTO") headquartered in Michigan and the Western District of Oklahoma specializing in the cultivation, brokering, and distribution of black-market marihuana across the country. In an effort to launder their criminally derived proceeds, members of the Lin DTO used a variety of monetary instruments and financial transactions, including but not limited to wire transfers, funnel and/or straw accounts, vehicle purchases, and the purchase of cashier's checks and real estate.

2.   On many occasions during the period of the conspiracy, members of the Lin DTO made use of funnel accounts in order to conceal the nature, location, source, ownership, and control of proceeds derived from the Lin DTO's marihuana distribution

activities. To that end, these accounts were often placed in the names of individuals not involved in the day-to-day operations of the Lin DTO.

3. Sometimes, these funnel accounts were employed to purchase real estate using drug proceeds, thereby concealing and disguising the nature, source, ownership, and control of the proceeds, as well as engaging in monetary transactions of more than $10,000 in criminally derived property. For example:

      a. On or about July 22, 2020, **NAIGANG LIN** caused a $50,000 cash deposit to be made into **TERRANCE JAMAHL ALLEN's** bank account ending in 6086 at Lake Michigan Credit Union ("LMCU"). Later that day, **TERRANCE JAMAHL ALLEN** obtained a cashier's check for $50,000, payable to First American Title Insurance Company, which was used to purchase a residence at 9460 Homerich Ave. SW, Byron Center, Michigan (the "Homerich Residence"). **TERRANCE JAMAHL ALLEN** has no legal interest in and to the Homerich Residence, which the Lin DTO then used to house a marihuana grow.

      b. On or about January 26, 2021, **NAIGANG LIN** accompanied D.S. to Bank of America and directed D.S. to obtain a cashier's check, made payable to Chicago Title, in the amount of $72,486.67, which was then used for a down payment on a residence at 5189 Bonasa Dr. NE, Rockford, Michigan (the "Bonasa Residence"). D.S., a longtime associate of **NAIGANG LIN** and his family, has no legal or other interest

in and to the Bonasa Residence, which the Lin DTO then used as a marihuana stash house.

c. In or about February 2021, **NAIGANG LIN** directed **NAIQING LIN** to open an account at LMCU and deposit over $30,000 in cash, which was then used to create a cashier's check for the purchase of a property at 1400 Sunset, Lansing, Michigan (the "Sunset Property"). **NAIQING LIN** has no legal interest in and to the Sunset Property, which the Lin DTO then used as a marihuana grow. **NAIYANG LIN** also helped fund the purchase of the Sunset Property by way of a $55,310.86 check to the seller of the Sunset Property, which was preceded by a $55,000 cash deposit into his account ending in 7630 at Capitol National Bank in Lansing, Michigan.

d. On or about April 30, 2021, **JUAN LYU** remitted a $10,000 cashier's check from her account ending in 3705 at JP Morgan Chase, which was then used to pay the earnest money deposit to Sun Title company for the purchase of a residence at 5253 Division Ave. S., Grand Rapids, Michigan (the "5253 Division Property"). The cashier's check was funded by two separate cash deposits into **JUAN LYU's** account: (1) a $9,000 deposit on April 12, 2021, and then (2) a $3,960 deposit on April 30, 2021. **JUAN LYU** has no legal interest in and to the 5253 Division Property. **NAIGANG LIN** also funded the purchase of the 5253 Division Property, which served as a marihuana grow and stash location for the

Lin DTO, via $100,000 cashier's check, made payable to Sun Title company, drawn on his account ending in 5212 at Consumer's Credit Union on May 26, 2021.  This $100,000 was funded in large part by a series of deposits over the month prior, all except one of which did not exceed $10,000.

e.  On or about April 28, 2022, **NAIGANG LIN** directed **JUAN LYU** to open a Bank of America Account ending in 1697 under the business name 274 Stirling LLC (the "274 Stirling Account"). **NAIGANG LIN** and **JUAN LYU**, who is the sole signer on the 274 Stirling Account and the registered agent for the associated business, 274 Stirling LLC, used the 274 Stirling Account to send a $375,962.26 wire transfer to a Mississippi title company, Brown, Langston, and Taylor, for the purchase of a residence at 274 Stirling Dr., Starkville, Mississippi.  The wire was funded by a $35,000 cash deposit made in Oklahoma City, along with a series of deposits from entities across the country which have no legal connection to **NAIGANG LIN**, **JUAN LYU**, or the Lin DTO.  **JUAN LYU** has no legal interest in and to the Stirling Residence.

f.  On July 25, 2022, **NAIGANG LIN** and **JUAN LYU** also used **JUAN LYU's** 247 Stirling Account to wire $100,000 to a title company for the purchase of a residence at 2653 Sycamore River Dr., Fowlerville, ~~Mississippi~~ Michigan (the "Sycamore Residence").  This wire transfer was preceded by two cash deposits—$61,000 and $39,000—made into the

account on the same day by **NAIGANG LIN** in Oklahoma City. **JUAN LYU** has no legal interest in and to the Sycamore Residence.

4.    During the period of the conspiracy, **NAIGANG LIN**, **LI JIN YANG**, and **JUAN LYU** would use bank accounts, some of which were set up as business accounts or ostensibly for the purchase of real estate, in furtherance of the Lin DTO, thereby concealing the nature, ownership, and control of drug proceeds. For instance,

   a. **JUAN LYU's** 247 Stirling Account was used not only to fund the purchase of the Stirling Residence and the Sycamore Residence but also to launder criminal proceeds for associates of the Lin DTO. On or about May 18, 2022, **JUAN LYU** and **LI JIN YANG**, in Oklahoma City, Oklahoma, conducted a $50,000 wire transfer from **JUAN LYU's** 247 Stirling Account to Individual 1's account ending in 2757 at Bank of America, money which was then used to purchase an approximately $1.5 million home.

   b. Other times, **NAIGANG LIN** and **JUAN LYU** would use her 247 Stirling Account to pay the Lin DTO's marihuana couriers. For example, on or about December 26, 2022, **JUAN LYU** deposited $5,000 cash into the account in Oklahoma City, which was then used to send **BARRY STADLER** an electronic payment through Zelle. **JUAN LYU** also used her account ending in 3705 at JP Morgan Chase to send $750 to **BARRY STADLER** via Zelle on November 4, 2021.

c. On June 28, 2022, **NAIGANG LIN** directed **DANIEL WALSH**, one of his marihuana couriers, to transfer $20,000 in drug proceeds from his Bank of America account ending in 4076 to **JUAN LYU's** 247 Stirling Account, which subsequently funded **NAIGANG LIN** and **JUAN LYU's** vacation in Las Vegas, Nevada, the following week. This transfer was funded by over $30,000 in cash deposits to **DANIEL WALSH's** account ending in 4076 on June 17, 2022. **DANIEL WALSH** would also make large deposits of drug proceeds into his account ending in 7987 at JP Morgan Chase in order to conceal the nature and source of drug proceeds, such as on May 5, 2022, when in Tampa, Florida, he made four consecutive cash deposits in the amounts of $3,100, $1,980, $1,980, and $1,980. **DANIEL WALSH** would also deposit drug proceeds into his account ending in 7987 in order to avoid transaction reporting requirements under Federal law, such as when he made three consecutive cash deposits in the amounts of $9,900, $4,980, and $2,460 on August 10, 2022.

5. During the period of the conspiracy, **NAIGANG LIN** and **NAIYANG LIN**, with the help of others, including G.M.L. and **BRANDON LIN**, used accounts in other peoples' names in order to deposit large sums of drug proceeds, both to conceal and disguise the nature, source, ownership, and control of the drug proceeds and to avoid transaction reporting requirements. For example:

a. On or about March 20, 2022, **NAIGANG LIN** made four cash deposits, in the amounts of $1,880, $1,580, $1,520, and $1,390, into G.M.L.'s account ending in 5961 at JP Morgan Chase.

b. On or about November 22, 2022, **NAIGANG LIN**, together with G.M.L., deposited $50,880, broken up into seven deposits, into G.M.L.'s account ending in 5961 at JP Morgan Chase. **NAIGANG LIN** returned to the bank later that day to obtain a cashier's check for $52,306.79 from this account, and he then used that check to pay off the balance on the Homerich Residence.

6.     During the period of the conspiracy, **NAIGANG LIN** used a JP Morgan Chase account ending in 2713 under the name "JJ Gourmet Kitchen," which was ostensibly the operating account for the Lin Family restaurant, Private Kitchen, which was located at 1117 NW 25th St., Oklahoma City, Oklahoma. The sole signer on the account (the "Private Kitchen Account") is **NAIQING LIN**, who allowed **NAIGANG LIN** to open the Private Kitchen Account in his (**NAIQING LIN's**) name by providing **NAIGANG LIN** his driver's license and social security card at the time the account was opened on or around February 16, 2022. The Private Kitchen Account was used by the Lin DTO in a variety of ways, including to pay marihuana couriers in an effort to conceal and disguise the nature, source, ownership, and control of their drug proceeds. For example:

a. On or about April 26, 2022, there was a $5,000 deposit into the Private Kitchen Account. That same day, there were two checks, each in the amount of $2,500, drawn on the account and made payable to N.P., an

23

established marihuana courier for the Lin DTO. The account was also used to issue a $1,000 check to N.P. on May 17, 2022.

b. Later that month, on May 31, 2022, there were two checks drawn on the account, in the amounts of $20,000 and $5,000, made payable to Individual 2. This money was then used to, among other things, pay for utility payments at marihuana grows.

7.     During the period of the conspiracy, the Lin DTO made large consecutive cash deposits of drug proceeds into the Private Kitchen Account in amounts less than $10,000 in an effort to avoid transaction reporting requirements under Federal law. Some of those consecutive cash deposits include:

a. A series of six ATM cash deposits, all less than $10,000 but totaling approximately $23,075, on May 27, 2022;

b. A series of six ATM cash deposits and one teller deposit, all less than $10,000, but totaling approximately $22,460, on June 23, 2022;

c. A series of five ATM cash deposits, all less than $10,000 but totaling approximately $15,980, on August 1, 2022; and

d. A series of four ATM cash deposits, all less than $10,000 but totaling approximately $11,425, on August 15, 2022.

8.     During the period of the conspiracy, **BRANDON LIN** did not relocate to Oklahoma with many of his family members. Nevertheless, **BRANDON LIN**, in conjunction with his brother **NAIYANG LIN**, used his account ending in 0061 at Bank of

America to conduct business in furtherance of the Lin DTO, with the intent to conceal and disguise the nature, source, ownership, and control of drug proceeds. For example:

      a. From on or about March 14, 2022, through on or about January 4, 2023, **BRANDON LIN** used his account ending in 0061 to send more than $6,000 in Zelle payments to **AHMED SALIM HARROLD**, a marihuana courier for the DTO. The payments were as follows: $150 on March 14, 2022; $250 on March 16, 2022; $1,100 on April 11, 2022; $1,330 on May 5, 2022; $300 on May 27, 2022; $1,000 on October 20, 2022; $1,000 on October 24, 2022; $100 on October 31, 2022; and $1,200 on January 4, 2023.

      b. On November 7, 2022, a $3,353.21 check, made payable to **NAIYANG LIN**, with an address of 18609 County Road 1580, Ada, Oklahoma—the location of the Lin DTO's illegally operating grow in Ada, Oklahoma—was deposited into **BRANDON LIN's** account ending in 0061.

9.   **NAIGANG LIN** would also direct **BRANDON LIN** to conduct financial transactions, such as on or about October 16, 2019, when **NAIGANG LIN** directed **BRANDON LIN** to deposit $10,000 into **BRANDON LIN's** account ending in 8920 at JP Morgan Chase for the purpose of issuing a cashier's check to Land One LLC. **NAIGANG LIN** instructed **BRANDON LIN** to break the deposits up into two transactions of $5,000 each and that he would pay him back because he had "$100,000 of stuff" that he would be getting rid of in two days.

The Grand Jury incorporates by reference all statements and allegations contained in Counts 1 through 13 and 15 through 47 inclusive, as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1956(h).

### Count 15
### (Concealment Money Laundering)

On or about May 18, 2022, within the Western District of Oklahoma,

------------------------------------------ **LI JIN YANG,**
**a/k/a Lily, and**
**JUAN LYU** --------------------------------------------------

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, a wire transfer, in the amount of $50,000 from **JUAN LYU's** account ending in 1697 at Bank of America to Individual 1's account ending in 2757 at Bank of America, which involved the proceeds of a specified unlawful activity, that is the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and Title 18, United States Code, Section 2.

26

## Count 16
**(Concealment Money Laundering)**

On or about December 26, 2022, within the Western District of Oklahoma,

-------------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin, and**
**JUAN LYU** -------------------------------------------------

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, a cash deposit in the amount of $3,490, into **JUAN LYU's** account ending in 1697 at Bank of America, which involved the proceeds of a specified unlawful activity, that is the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and Title 18, United States Code, Section 2.

## Counts 17–21
### (Concealment Money Laundering)

On or about the dates set forth below, within the Western District of Oklahoma,


-------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,** ----------------------------------------------

did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, to wit, the cash deposits described below, into G.M.L.'s account ending in 5961 at JP Morgan Chase, which involved the proceeds of a specified unlawful activity, that is the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

| COUNT | DATE | AMOUNT |
|-------|------|--------|
| 17 | 3/18/2022 | $2,567 |
| 18 | 3/20/2022 | $1,880 |
| 19 | 3/20/2022 | $1,580 |
| 20 | 3/20/2022 | $1,520 |
| 21 | 3/20/2022 | $1,390 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**Counts 22–24**
**(Concealment Money Laundering)**

On or about the dates set forth below, within the Western District of Oklahoma,

--------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin, and**
**DANIEL WALSH** -------------------------------------------

did knowingly conduct and attempt to conduct financial transactions affecting interstate

and foreign commerce, to wit, the cash deposits described below, into **DANIEL WALSH's**

account ending in 4076 at Bank of America, which involved the proceeds of a specified

unlawful activity, that is the felonious receiving, buying, selling, and dealing in controlled

substances and conspiring to do the same, in violation of Title 21, United States Code,

Sections 841(a)(1) and 846, knowing that the transactions were designed in whole and in

part to conceal and disguise the nature, location, source, ownership, and control of the

proceeds of said specified unlawful activity and that while conducting and attempting to

conduct such financial transactions knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity.

| COUNT | DATE | AMOUNT |
|-------|------|--------|
| 22 | 6/17/2022 | $16,000 |
| 23 | 6/17/2022 | $14,600 |
| 24 | 6/17/2022 | $900 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and Title

18, United States Code, Section 2.

## Counts 25–27
### (Structuring Money Laundering)

On or about the dates set forth below, within the Western District of Oklahoma,

---------------------------------------- **DANIEL WALSH** ----------------------------------------

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the cash deposits described below, into his account ending in 7987 at JP Morgan Chase, which involved the proceeds of a specified unlawful activity, that is the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under Federal law, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

| COUNT | DATE | AMOUNT |
|-------|------|--------|
| 25 | 8/10/2022 | $9,900 |
| 26 | 8/10/2022 | $4,980 |
| 27 | 8/10/2022 | $2,460 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## Counts 28–45
### (Concealment Money Laundering)

On or about the dates set forth below, within the Western District of Oklahoma,

---------------------------------------- **NAIYANG LIN**

**a/k/a Nai Yang Lin,** ----------------------------------

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the cash deposits described below, into **BRANDON LIN's** account ending in 0061 at Bank of America, which involved the proceeds of a specified unlawful activity, that is the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

| COUNT | DATE | AMOUNT |
|---|---|---|
| 28 | 5/27/2022 | $700 |
| 29 | 8/12/2022 | $2,100 |
| 30 | 10/5/2022 | $2,420 |
| 31 | 10/5/2022 | $920 |
| 32 | 10/17/2022 | $3,100 |
| 33 | 10/17/2022 | $1,200 |
| 34 | 10/17/2022 | $908 |
| 35 | 10/24/2022 | $3,953 |
| 36 | 10/24/2022 | $3,421 |
| 37 | 10/24/2022 | $840 |
| 38 | 11/14/2022 | $3,000 |
| 39 | 11/14/2022 | $2,700 |
| 40 | 11/14/2022 | $1,500 |
| 41 | 11/14/2022 | $1,300 |
| 42 | 11/14/2022 | $2,150 |
| 43 | 11/14/2022 | $1,880 |
| 44 | 11/14/2022 | $90 |
| 45 | 1/4/2023 | $904 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## Counts 46–47
### (Monetary Transaction in Criminally Derived Property)

On or about the dates set forth below, within the Western District of Oklahoma,



-------------------------------------------- **NAIGANG LIN,**
**a/k/a Nai Lin,** --------------------------------------------

did knowingly engage and attempt to engage monetary transactions by, through, or to a financial institution, namely Bank of America, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the cash deposits set forth below, such property having been derived from a specified unlawful activity, that is, the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| **46** | 7/25/2022 | Deposit of $61,000 into **JUAN LYU's** account ending in 1697 at Bank of America. |
| **47** | 7/25/2022 | Deposit of $39,000 into **JUAN LYU's** account ending in 1697 at Bank of America. |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE

The allegations contained in this Indictment are hereby re-alleged and incorporated for the purpose of alleging forfeiture.

Upon conviction of any of the offenses alleged in Counts 1, 2, 3, 6, 8–11, and 46–47 of this Indictment, **NAIGANG LIN** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such

offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of any of the offenses alleged in Counts 14, 16, 17–21, and 22–24 of this Indictment, **NAIGANG LIN** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of any of the offenses alleged in Counts 1, 8, 12, and 13 of this Indictment, **NAIYANG LIN** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of any of the offenses alleged in Counts 14 and 28–45 of this Indictment, **NAIYANG LIN** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of any of the offenses alleged in Counts 1 and 12 of this Indictment, **LI JIN YANG** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of any of the offenses alleged in Counts 14 and 15 of this Indictment, **LI JIN YANG** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of any of the offenses alleged in Counts 1 and 12 of this Indictment, **DONG LIN** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Upon conviction of any of the offenses alleged in Counts 1, 6, 8, and 9–11 of this Indictment, **CHANG-HUI CHEN** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Upon conviction of any of the offenses alleged in Counts 1, 3, 6, 8, and 9–11 of this Indictment, **MEIYAN XIAO** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Upon conviction of the offense alleged in Count 1 of this Indictment, **BARRY STADLER** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used,

or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Upon conviction of any of the offenses alleged in Counts 1 and 2 of this Indictment, **DANIEL WALSH** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of any of the offenses alleged in Counts 14 and 22–27 of this Indictment, **DANIEL WALSH** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of any of the offenses alleged in Counts 1 and 7 of this Indictment, **TERRANCE JAMAHL ALLEN** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of the offense alleged in Count 14 of this Indictment, **TERRANCE JAMAHL ALLEN** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of the offense alleged in Count 1 of this Indictment, **FEI XIE** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Upon conviction of the offense alleged in Count 1 of this Indictment, **AHMED SALIM HARROLD** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of the offense alleged in Count 14 of this Indictment, **AHMED SALIM HARROLD** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of any of the offenses alleged in Counts 1 and 4 of this Indictment, **LUIS RAFAEL LARIOS BENITES** shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense.

Likewise, upon conviction of the offense alleged in Count 5 of this Indictment, **LUIS RAFAEL LARIOS BENITES** shall forfeit to the United States any and all firearms and ammunition involved in the commission of the offense.

Upon conviction of the offense alleged in Count 14 of this Indictment, **BRANDON LIN** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of the offense alleged in Count 14 of this Indictment, **NAIQING LIN** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

Upon conviction of any of the offenses alleged in Counts 14–16 of this Indictment, **JUAN LYU** shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to a money judgment representing the proceeds obtained as a result of the offense.

The property subject to forfeiture includes, but is not limited to:

1.  Real property located at 1744 68th Street Southwest, Byron Center, Michigan 49315;

2.  Real property located at 9460 Homerich Avenue Southwest, Byron Center, Michigan 49315;

3.  Real property located at 1406 Sunset Avenue, Lansing, Michigan 48917;

4.  Real property located at 5500 Division Avenue South, Grand Rapids, Michigan 49548;

5.  Real property located at 5189 Bonasa Drive Northeast, Rockford, Michigan 49341;

6.  Real property located at 5253 Division Avenue South, Grand Rapids, Michigan 49548;

7.  Real property located at 1718 Broadmoor Street, Muskegon, Michigan 49442;

8.  Real property located at 2866 Turtlecreek Drive, East Lansing, Michigan 48823;

9.  Real property located at 2653 Sycamore River Drive, Unit 192, Fowlerville, Michigan 48836;

10. Real property located at 274 Stirling Drive, Starkville, Mississippi 39759;

11. a 2013 Black Chevrolet Avalanche, bearing VIN 3GNTKGE70DG314133;

12. a 2014 Gray Maserati Ghibli, bearing VIN ZAM57RTA0E1077118;

13. a 2014 White Lexus ES, bearing VIN JTHBK1GG2E2131095;

14. a 2015 Black Dodge Ram Pickup, bearing VIN 1C6RR7UT1FS530721;

15. a 2015 White BMW X5, bearing VIN 5UXKR0C5XF0K71824;

16. a 2018 Blue Chevrolet Silverado, bearing VIN 1GC4K1EY5JF244810;

17. a 2020 Black Dodge Ram Pickup, bearing VIN 1C6SRFFT4LN393969;

18. a 2020 White Ford Transit Van, bearing VIN 1FTBW3XG7LKB42706;

19. a 2020 White GMC Denali Pickup, bearing VIN 1GT49REY8LF103341;

20. a 2021 Black Mercedes GLE, VIN 4JGFB4KBXNA815961;

21. $8,536.11 in funds seized from PNC Bank account number XXXXX0525;

22. $545.19 in funds seized from JPMorgan Chase Bank account number XXXXX3705;

23.  $511.89 in funds seized from Bank of America account number XXXXX1697;

24.  $620.63 in funds seized from Bank of America account number XXXXX7789;

25.  $3,670.15 in funds seized from JPMorgan Chase Bank account number XXXXX2713;

26.  $23.60 in funds seized from Huntington National Bank account number XXXXX7935;

27.  $1,825.00 in funds seized from Bank of America account number XXXXX0061;

28.  $64.52 in funds seized from Bank of America account number XXXXX2083;

29.  $20,548.43 in funds seized from Bank of America account number XXXXX4874;

30.  $4,979.37 in funds seized from KeyBank account number XXXXX5358;

31.  $1,322.75 in funds seized from Bank of America account number XXXXX2606;

32.  $23.78 in funds seized from Bank of America account number XXXXX2619;

33.  $266.62 in funds seized from Huntington National Bank account number XXXXX4081;

34.  all funds in Coinbase user account 5a26f99012ec1d012c735dc4;

35.  approximately $18,294.00 in U.S. currency, seized from 8117 NW 84th St., Oklahoma City, Oklahoma;

36.  approximately $12,920.00 in U.S. currency, seized from 5800 Sanabel Court, Oklahoma City, Oklahoma;

37.  approximately $25,101.00 in U.S. currency, seized from 5800 Sanabel Court, Oklahoma City, Oklahoma;

38.     approximately $3,500.00 in U.S. currency, seized from 5800 Sanabel Court, Oklahoma City, Oklahoma;

39.     approximately $46,630.00 in U.S. currency, seized from 1744 68th St. SW, Byron Center, Michigan;

40.     a Rolex Oyster Perpetual Datejust Watch;

41.     a Rolex Sea Dweller Oyster Watch;

42.     a green semi-automatic 9mm handgun, with no serial number; and

43.     any and all ammunition or magazines not specified herein.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), **NAIGANG LIN, NAIYANG LIN, LI JIN YANG, BARRY STADLER, DANIEL WALSH, TERRANCE JAMAHL ALLEN, AHMED SALIM HARROLD, BRANDON LIN, NAIQING LIN,** and **JUAN LYU** shall forfeit any other property belonging to the defendants, up to the value of the property described above which were obtained by the defendants as a result of the offenses, if, by any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 924(d); Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

ROBERT J. TROESTER
United States Attorney

NICK COFFEY
Assistant United States Attorney